Good morning, Your Honors. Kevin Beauvais for the petitioner in this case. Your Honors, the question in this case is, does an exclusion order interrupt continuous physical presence under the cancellation of removal statute? The statute does not say it does. No regulation says it does. No judicial or administrative decision says it does. Pardon me, Your Honor? No, he's talking to some people to get his equipment so he can hear us. Can you hear us now, Judge? Yes. All right. The continuous physical presence rules are expressed in terms of departures and times outside of the U.S., 90 days, 100 days in the aggregate. Under the Romales and Vasquez-Lopez cases, a return or an administrative voluntary departure under threat of deportation is also a break. This case, however, is more akin to the Tapia case where the, albeit in this case the petitioner was more formally turned around than in Tapia, but it was still not a departure, and so therefore not interruptive of continuous physical presence. The government may argue that the formality of the process, the entry of a formal exclusion and deportation order, distinguishes this case from the Tapia case, but this, that was a 1996 order, a procedure at that time to determine excludability. The issue of continuous physical presence was not even adjudicated. You know, these questions, and this isn't a unique question. The situation may be different. You might want to get right to whether or not his voluntary departure was in lieu of removal proceedings. Was it? It was not because of the this is the, that is the second issue because in this case there are two, there are, there's the exclusion order and then a subsequent voluntary departure under, under threat of removal. In the exclusion process, Your Honor, this petitioner is not eligible for cancellation of removal or suspension of deportation. It's a little amplified, but. Yes, sir. This doesn't disturb you, does it, sir? All right, go ahead. I can keep on going. But Congress could have said that an exclusion order is interruptive of continuous physical presence. It did not. And there is no case under the current or the previous law that says that it is. And because the statute and because the judicial and administrative decisions view continuous physical presence in terms of departure, an exclusion order should not be viewed as interruptive of continuous physical presence. What does an exclusion order say? Yes, Your Honor. An exclusion order, it says you are excluded and deported from the United States. However, the issue in that proceeding is not whether someone has continuous physical presence in this country, but whether that person is, was excludable. What it says is we don't want you here. Stay out. Correct. But it's different from a deportation order, which is you're here already. We're kicking you out. All right. And you're saying that this order which says we don't want you here, stay out, if the guy violates it, it doesn't mean anything, and he can, you know, continue with his physical presence in this country. I'm saying that under the way the statute Is that entitled to a benefit? I'm saying that the way the statute is worded, the statute is worded in terms of a departure. So if there's no departure, then there's no loss of continuous physical presence. Assuming that the exclusion order is not interruptive, there is a, in this case, a subsequent entry and a, the Respondent, the Petitioner was detained and administratively returned to Mexico. And assuming that the Court finds there, that the exclusion order was not interruptive, I believe the case should be remanded to the Board to determine whether the subsequent acceptance of administrative voluntary departure was in accordance with this Court's decision in the Ibarra-Flores case. Thank you, Your Honor. You'll have time. Go ahead. Counsel, I have a question. Yes, sir. For the presence to be interrupted, does the alien, when he departs, have to be told specifically that the departure is going to terminate continuous presence? In other words, does the alien have to have something sort of like a Miranda warning that he's going to lose that right in order for it to be terminated? Or should this be terminated if he departs under any kind of formal process? Well, Your Honor, this Court's ruling in the Ibarra-Flores case seemed to, did say that it must be a knowing and intelligent waiver of the right to go before the, of the right to fight the case. So I think in some ways, this Court's ruling in Ibarra-Flores is in a way a mini Miranda-type case. It would have to be a knowing waiver of not fighting deportation. But does that mean he has to know the consequences on continuous presence? It would seem to me that knowing would be knowing, and although it might be a burden for the, on the government, it seems to me that that's, that should be one of the things that the person would have to know before agreeing to not fight the case or not seek, not seek a hearing before the immigration judge. Thank you, Your Honor. Thank you. You, you have time for rebuttal, Will. Good morning. My name is Nancy Friedman for the Respondent Attorney General. Let me begin by just focusing on what the issue is in front of the Court today. And the only issue today is the legal significance of the order of removal and whether that terminated his physical presence for purposes of cancellation. The answer is yes, it does. Let me refer to the record at page 261. That is the order from 1996 in which Petitioner was ordered excluded. Now, at that time, Petitioner had a formal proceeding and a hearing in front of an immigration judge. He was ordered removed and left the country. He returned very shortly thereafter, I believe within the same month, in June 1996, and then was put in proceedings in February. This is the incident proceeding before the Court today. This case is nothing like a Tapia or Ibarra situation, because when we focus on what the concern was of the Court in those type situations, they were border turnaround cases, where an alien presented at the border and signed an order and was sent back. Without the formal process. The Petitioner in this case got more process than that on more than one occasion. Starting back in 1996 for the order of exclusion, as I stated, that was a formal process, and he departed the country. When, after he re-entered, he was issued a notice to appear and went through a complete fair hearing in front of an immigration judge, where he sought relief in the form of cancellation. The relief was denied because he could not meet the continuous physical presence. Mr. Friedman, do you think that there's some language that a court has used or failed to use that would cause the Petitioner, in this case, not to understand clearly what it means when we say excluded or deported or whatever it is? Do you think there's some language we need to correct in existing opinions? Not that I can point to, Your Honor. Both the statutes and the cases in Vasquez-Lopez, Tapia, and Ibarra all seem perfectly clear to me as far as the issues, the only issue that's in front of the court today. There was never an allegation, either at the hearing before the immigration judge in the instant matter where he sought cancellation or anywhere else that there was an issue of any knowing or voluntary departure of a waiver of any rights whatsoever. If I could very briefly point to the Tapia decision where the court said some absences do interrupt an alien's continuous physical presence, no matter how brief, and then point to the Vasquez-Lopez decision and reiterate that this court held an alien's continuous physical presence. The United States, pursuant to a formal process known as an administrative voluntary departure, could not continue to accrue presence in the U.S. from an earlier date and deferred to Ramalla's. I'm at a loss, honestly, to explain why his 1996 order and subsequent return to Ramalla, it could be any clearer. And I don't think there's any relevance to the under threat of deportation languages and references that the court addressed in Tapia and Ibarra-Flores. They're just totally different situations that are inapplicable here. And the immigration judge was correct in this case, even though it preceded Tapia and Ibarra, those cases only reiterated what the immigration judge decided here, that there was a break in his physical presence and he did not have 10 years. Again, simply to reiterate what the court was concerned about in the Tapia-type border turnarounds was the lack of formal process and an alien who may not knowingly waive his rights. This is not such a case and there's never been an allegation that it falls under those considerations. If the court has no further questions, I will submit. Thank you very much. Roberts. Counsel? In reply, Your Honors, first of all, let me just make the correction that counsel spoke, the order of exclusion is at the record at page 95. And again, an exclusion order is very different from a deportation order. A deportation order, we now no longer have this bifurcated proceedings, but the exclusion order is for someone who is trying to come into the USA, but is denied entry and excluded and deported. And so at least under the literal reading of the statute, there was no departure. There was no acceptance of a return or voluntary departure under threat of deportation because this person had already departed on their own volition and they were trying to return to this country. They were not taken out or kicked out or they did not accept a return under threat of deportation because they were already out. And secondly, with respect to the 1996 return in this case, because there is that as well, at the record at page 41, there is no indication that the immigration judge found that that return was under threat of deportation as required under Vasquez-Lopez and now with the additional requirements under Ibarra-Flores. Thank you, Your Honors. Thank you. The case is just dogged. It is submitted.
judges: Farris, Gould, Duffy